STATE OF NORTH CAROLINA v. RONALD EARL JENKINS

No. 5

(Filed 7 March 1977)

**1. Criminal Law § 75— admissibility of confession — waiver of counsel**

Defendant's confession was properly admitted in evidence where the court made findings consistent with the State's evidence on *voir*

*dire* that defendant was given the *Miranda* warnings before inter-rogation, defendant stated he did not want an attorney and thereafter made an oral statement, and defendant signed a written waiver of his rights before signing a typewritten confession, and where the court found that defendant's testimony that he stated that he wanted a lawyer and signed the written waiver of his rights without reading it because he thought he was getting a lawyer was not believable.

2. **Criminal Law § 76— voluntariness of confession — determination by judge**

The trial court did not err in failing to instruct the jury as to the law relating to the voluntariness of defendant's confession since voluntariness is for determination by the judge unassisted by the jury.

3. **Criminal Law §§ 33, 75— credibility of confession — manner of secur-ing defendant during transportation to this State**

The manner in which defendant was secured while being trans-ported from Florida to North Carolina was a fact so remote in time and place from defendant's confession that its admission would have carried little weight as a circumstance affecting the credibility of the confession, and the exclusion of such evidence was not prejudicial, where defendant went to bed shortly after arriving at a jail in North Carolina at 4:45 a.m. and slept until 12:00 noon, defendant was then taken to the sheriff's office for interrogation, and defendant's writ-ten confession was not signed until 4:00 p.m.

4. **Criminal Law §§ 23, 89— prior inconsistent statements — plea negotia-tions**

The district attorney's cross-examination of defendant about prior inconsistent statements made in the presence of the district attorney, the sheriff and defendant's former counsel did not violate G.S. 15A-1025 where the record does not reveal that any evidence of plea negotiations *as such* was offered into evidence.

5. **Criminal Law § 35— motive of others to commit the crime**

In this prosecution for armed robbery, the trial court did not err in refusing to permit defendant to cross-examine the victim about a prior incident at the victim's restaurant involving his refusal to sell beer to two intoxicated individuals for the purpose of showing that other persons might have had a motive to rob the victim, since evi-dence tending to show that someone else committed the crime is not admissible unless it points directly to the guilt of the third party.

6. **Criminal Law §§ 33, 66— credibility of identification — others meeting description of defendant**

The trial court did not err in refusing to permit defendant to testify for the purpose of discrediting a robbery victim's identification of him that he knew of other black males living in the town where the crime occurred who were about his size and had goatees, since the probative value of the testimony was so weak that it should not have been allowed to distract the jury's attention from material mat-ters.

7. **Criminal Law §§ 6, 132— intoxication and unconsciousness — jury's disregard of instructions — motion for new trial**

   The trial court in an armed robbery case did not abuse its discretion in refusing to set aside the verdict of guilty on the ground that in view of the abundant evidence as to defendant's intoxication and unconsciousness, it is manifest that the jury totally disregarded the court's instructions on those defenses, since defendant's evidence of intoxication and unconsciousness was refuted by testimony of the victim and his wife concerning defendant's actions at the time of the crime and by defendant's confession which disclosed that he, with other persons, planned beforehand and carried out the robbery.

8. **Constitutional Law § 36; Robbery § 6— life imprisonment for armed robbery — constitutionality**

   Judgment imposing on defendant a sentence of life imprisonment for armed robbery does not constitute cruel and unusual punishment.

9. **Constitutional Law § 20; Robbery § 6— sentence for armed robbery — discretion of court — equal protection**

   A defendant sentenced to life imprisonment for armed robbery was not denied equal protection of the laws because of the wide range of discretion allowed the trial judge under G.S. 14-87(a).

APPEAL by defendant from *Fountain, J.,* 12 April 1976 Session of HERTFORD Superior Court. Defendant was charged with armed robbery to which he entered a plea of not guilty.

The State's evidence, in substance, was as follows:

Walter G. Liverman testified that on 8 November 1975 he closed his grill in Murfreesboro, North Carolina, between 1:30 and 1:45 a.m. and proceeded to his home. He was carrying a cash box which contained approximately $1,100. He drove his automobile into his lighted carport which had a "stoop" upon which a door opened into the house. Mr. Liverman placed his cash box on the concrete steps leading into the house and locked his automobile. He heard his dog barking and as he started toward the backyard he heard steps behind him. When he turned he saw defendant Ronald Earl Jenkins coming toward him with a pistol. Defendant said "this is a holdup" and before Mr. Liverman could raise his hands, defendant shot him three times. One bullet entered his chin and exited through his jaw. One struck him near his nose and exited through the back of his neck and the third bullet pierced his finger. Before he lapsed into unconsciousness the witness saw defendant take his cash box and flee. The witness further testified that Ronald Earl Jenkins' mother, Bernice Jenkins, had worked for him for fifteen years and that he had known Ronald since he was a small boy.

Mrs. Janet Warren Liverman testified that she was awakened by the barking of their boxer dog and shortly thereafter she heard three shots. She went to her bedroom window and saw a man whom she did not recognize. A second man passed within three yards of her window and when she called out to him, he fired two shots toward her. When he turned and fired the shots, she recognized this person as defendant Ronald Earl Jenkins. Without objection both Mr. and Mrs. Liverman positively identified defendant as the man who shot and robbed Mr. Liverman. Both these witnesses stated that they did not immediately tell the police that they recognized defendant because they were afraid.

The State also offered evidence of a confesssion which will be discussed in the opinion.

Defendant testified that he had known the Livermans all of his life and had occasionally worked for them. On the night of 7 November 1975 and the early morning hours of 8 November 1975 he had been drinking beer, liquor and vodka and smoking marijuana. He recalled that he had accompanied Teresa Bird and Peggy High, students at Chowan College, to their dormitory at about 1:00 a.m. Shortly thereafter he passed out and remembered nothing else until the next morning. Defendant denied going to the Liverman residence or having any knowledge of the robbery until the next day. He was questioned concerning the Liverman robbery by police officers on Sunday, 9 November 1975, and left for Florida that night. He remained in Florida until he was arrested and brought back to Winton on 19 December 1975. He stated that he went to Florida because the local police were trying to implicate him in the Liverman robbery because of his past record.

Cherry Ball and Peggy High testified that they saw defendant on the night of 7 November 1975 and that he was highly intoxicated. He left one of the Chowan College girls' dormatories at 1:00 a.m. on 8 November 1975, that being the hour at which all male persons were required to leave. Ardell Brooks, defendant's sister, testified that she saw defendant on the night of 8 November 1975 and he was highly intoxicated at that time. Defendant's mother, Bernice Jenkins, also testified that she saw defendant at about 12:30 a.m. on that night and he was under the influence. The testimony of defendant's other witnesses was either cumulative or irrelevant.

The jury returned a verdict of guilty as charged and Judge Fountain imposed a sentence of life imprisonment.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*Bruce C. Johnson, for defendant.*

BRANCH, Justice.

[1]  Defendant contends that the trial judge erred by admitting the written statement or confession purportedly signed by defendant on 19 December 1975.

Hertford County Sheriff James Baker was questioned concerning a statement made by defendant and upon defendant's objection the jury was excused and a *voir dire* hearing was held.

Sheriff Baker testified that defendant was brought to the Hertford County jail from Florida during the early morning hours of 19 December 1975. At noon on that day he had his deputies bring defendant to the courthouse. He read the *Miranda* warnings to defendant and specifically asked him if he wanted a lawyer, to which defendant replied, "not at this time." Defendant then made an oral statement and the Sheriff sent for Chief Wheeler of the Murfreesboro Police Department. Upon Chief Wheeler's arrival defendant was again warned of his rights and he then signed a waiver of rights. Sheriff Baker stated that he talked with defendant for about thirty minutes before he made the oral statement and at that time defendant appeared to be normal. No one made any promises to defendant nor was defendant threatened in any way. Defendant actually signed the written waiver of rights at 3:30 p.m. and signed the typewritten confession at 4:00 p.m. During the period between 12:00 and the signing of these writings, defendant was also booked, fingerprinted and certain required reports were made out by police officers. The written waiver of rights was a repetition of the *Miranda* warnings. It contained a statement that defendant understood his rights and that he affirmatively waived presence of counsel. The essence of his written confession was that defendant, Travis Watford, Brynell Askew and Kenneth Hall went to Mr. Liverman's home at about 1:50 a.m. on 8 November 1975 for the purpose of robbing him. Defendant stated that Hall gave him a pistol as he left the automobile and

that during his confrontation with Mr. Liverman he panicked and fired the pistol. He then took the money box and ran. Upon hearing someone call from the house, he shot toward the house. He and his companions went to a motel in Virginia where the money was divided. One of his companions brought him back to Murfreesboro in the early hours of the morning.

Defendant, testifying on *voir dire,* stated that he was brought from Florida by local officers and that during the trip he was handcuffed and wore chains. They arrived at Winton at about 4:45 a.m. on 19 December 1975 and he was placed in the Hertford County jail. He was awakened at noon on that day and carried to the courthouse. He testified that the Sheriff asked him if he wanted a lawyer and he replied that he did. He was handed the written waiver of rights and he signed it without reading it because he thought he was getting a lawyer. He did not sign the written confession and the signature appearing on that writing was not his own. On cross-examination defendant stated that he was twenty years old and that he could read and write. He had received a general education diploma. He admitted that his "rights" had been read to him on several other occasions in Hertford County.

Judge Fountain found facts consistent with the State's evidence and concluded:

> . . . [T]hat such statement, if any, as made by the defendant on the 19th day of December, 1975, was freely, knowingly and voluntarily made after knowingly, voluntarily and expressly waiving his right to counsel and his right to remain silent. Finally, the Court, while having considered all defendant's evidence which is in conflict with the Court's findings, finds it is not believable and for that reason along with the other findings concludes that the defendant's objection should be and it is overruled.

It is well settled in this jurisdiction that when an in-custody confession is challenged the trial judge must conduct a *voir dire* hearing to determine whether the confession was voluntarily made. When the *voir dire* evidence is conflicting, as here, the trial judge must weigh the credibility of the witnesses, resolve the contradictions and the conflicts, and make appropriate findings of fact. When supported by competent evidence his findings are conclusive on appeal. *State v. Biggs,* 289 N.C. 522, 223 S.E. 2d 371; *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844;

State v. Jenkins

*State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634. Here there was ample, competent evidence to support the trial judge's findings which in turn support his conclusions and ruling. The trial judge properly admitted defendant's confession.

[2] Neither do we find merit in defendant's contention that the trial judge erred by failing to instruct the jury as to the law relating to the voluntariness of defendant's confession. The language contained in *State v. Walker,* 266 N.C. 269, 145 S.E. 2d 833, supports our conclusion. There Justice Bobbitt (later Chief Justice), speaking for the Court, stated:

> . . . In *S. v. Davis,* 253 N.C. 86, 116 S.E. 2d 365, Higgins, J., in accordance with decisions cited in the quotation from *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, said: "According to our practice the question whether a confession is voluntary is determined in a preliminary inquiry before the trial judge." After such preliminary inquiry has been conducted, the approved practice is for the judge, in the absence of the jury, to make findings of fact. These findings are made only for one purpose, namely, to show the basis for the judge's decision as to the admissibility of the proffered testimony. *They are not for consideration by the jury and should not be referred to in the jury's presence.*
>
> If the judge determines the proffered testimony is admissible, the jury is recalled, the objection to the admission of the testimony is overruled, and the testimony is received in evidence for consideration by the jury. If admitted in evidence, it is for the jury to determine whether the statements referred to in the testimony of the witness were in fact made by the defendant and the weight, if any, to be given such statements if made. Hence, evidence as to the circumstances under which the statements attributed to defendant were made may be offered or elicited on cross-examination in the presence of the jury. Admissibility is for determination by the judge unassisted by the jury. Credibility and weight are for determination by the jury unassisted by the judge.

[3] Defendant argues that the trial judge erred in refusing to permit him to testify as to how he was secured while being transported from Miami, Florida, to the Hertford County jail in Winton, North Carolina.

During the course of direct examination defendant testified that after being apprehended in Miami, Florida, he was driven back to Winton, North Carolina, and arrived at the jail there at about 4:45 a.m. on 19 December 1975. Only two stops were made during this trip. At this point he was asked how he was secured while traveling and objection to this question was sustained. The record reveals that defendant would have responded that he was secured by handcuffs and waist chains and leg shackles. He contends that this evidence was admissible as bearing upon the weight and credibilty to be given to the purported confession made by him following this return trip to North Carolina.

Further testimony of defendant reveals that shortly after arriving at the jail at 4:45 a.m. he went to bed and slept until 12:00 noon. During this period of approximately seven hours, he was awakened only twice, at which times he was offered breakfast and lunch. When finally awakened at 12:00 noon, defendant was taken to the Sheriff's office for interrogation. The evidence reveals that the written confession was not signed until about 4:00 p.m.

It is true that "[o]nce a confession is admitted, *weight* and *credibility* are entirely for the jury; and the defendant may introduce evidence designed to persuade the jury . . . that *it was made under such circumstances* as to deprive it of credibility." [Emphasis added.] 2 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 187, pp. 88-89; *State v. Barber,* 268 N.C. 509, 151 S.E. 2d 51. However, we are of the opinion that the manner in which defendant was secured while returning to North Carolina was a fact so remote in time and place from the actual confession that its admission would have carried little weight as a circumstance affecting the credibility of the statement. Certainly in light of the other strong evidence presented by the State, we do not think that the admission of this evidence would have changed the verdict of the jury.

[4] Defendant assigns as error the failure of the trial judge to immediately stop the prosecutor's cross-examination concerning certain extrajudicial statements made by defendant in the prosecutor's presence.

**State v. Jenkins**

Defendant stated on direct examination that he knew nothing about the charged crime. Upon cross-examination the following exchange took place:

"Q. Mr. Jenkins, let me ask you this. Do you remember sitting in that back room right in there with your lawyer, with Sheriff Baker and me when you offered to volunteer to go to Virginia to find the steel box that you took from Mr. Liverman?

MR. JOHNSON: Objection.

THE COURT: Overruled.

EXCEPTION No. 9

MR. JOHNSON: Request the jury be instructed.

THE COURT: Instructed in what way?

MR. JOHNSON: To disregard what Mr. Burgwyn said.

THE COURT: Overruled.

EXCEPTION No. 10

A. No, sir.

Q. Do you deny that?

A. Yes, sir, I do."

There were two or three other similar questions and like answers. After taking a recess the trial judge instructed the jury:

THE COURT: Ladies and gentlemen, the objection that Mr. Johnson has made is sustained and in view of that I am going to reinstruct you that you will disregard any questions that have been asked the defendant about any conference with the District Attorney or his then attorney, Mr. Herbin, or anyone else at the time Mr. Burgwyn was asking him about just before this ten-minute recess. Disregard it. Don't consider it for any purpose. Obviously, the questions asked do not constitute evidence so you will disregard the questions as well as any reference to that. . . .

It is well settled that when a defendant takes the witness stand he may be impeached as any other witness. *State v. Dawson*, 278 N.C. 351, 180 S.E. 2d 140; *State v. McKinnon*, 223 N.C. 160, 25 S.E. 2d 606. One of the ways he may be impeached

is by showing prior extrajudicial statements inconsistent with his testimony at trial. 1 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 46, p. 128; *State v. Cope,* 240 N.C. 244, 81 S.E. 2d 773. However, defendant strenuously argues that the challenged cross-examination was precluded by the provisions of G.S. 15A-1025 which provides:

> The fact that the defendant or his counsel and the solicitor engaged in plea discussions or made a plea arrangement may not be received in evidence against or in favor of the defendant in any criminal or civil action or administrative proceedings.

The language of this statute clearly states its purpose. This record does not reveal that any evidence of plea negotiations *as such* was offered into evidence. In fact, the record shows that the District Attorney unequivocally stated that he had never discussed a plea at all with defendant's then counsel Mr. Herbin, or the defendant. It is true that it could be inferred that the District Attorney, defense counsel and the Sheriff *might* have been discussing the disposition of this case. However, it is just as reasonable to infer that defendant had, in fact, made the confession admitted into evidence and that the District Attorney was exploring the possibility of using defendant as a witness in cases against his alleged accomplices when this inconsistent statement was purportedly made. Even had the statements been made during a plea-bargaining session, we do not think that the District Attorney's questions, which tended to impeach defendant's testimony by showing a contradictory statement, would violate the provisions of the statute unless the *fact* of plea bargaining was revealed. The trial judge's instruction to the jury to disregard the questions also tended to cure any possible prejudice to defendant.

This assignment of error is overruled.

[5]  Defendant next assigns as error the exclusion of certain testimony sought to be elicited by him on cross-examination of the prosecuting witness.

Defense counsel attempted to question the prosecuting witness, Walter Liverman, about an incident occurring in the spring or summer of 1975 at his restaurant. Objections to these questions were sustained by the trial judge. The record reveals that if the witness had been allowed to answer the questions,

he would have testified that he recalled an earlier incident involving his refusal to sell beer to two intoxicated individuals.

It is defendant's contention that evidence of this prior incident suggests that other persons might have had a motive to rob Mr. Liverman, thus making it less likely that defendant committed the robbery. A similar argument was considered and rejected in *State v. Smith,* 211 N.C. 93, 189 S.E. 175, wherein this Court stated:

> While under certain circumstances it has been held by this Court competent for the defendant to introduce evidence tending to show that someone else than he committed the crime charged, *S. v. Davis,* 77 N.C., 483, it is well settled that such evidence is not admissible unless it points directly to the guilt of the third party, evidence which does no more than create an inference or conjecture as to such guilt is inadmissible.
>
> . . . To the same effect is Wharton's Criminal Evidence (11th Ed.), Vol. 1, par. 274, p. 349, where it is said: "In any event, before such testimony can be received, there must be such proof of connection with the crime or such a train of facts or circumstances as tends to point out someone other than the accused as the guilty party. Remote acts, disconnected from and outside of the crime itself, cannot be separately proved for such a purpose."

In *State v. Lambert,* 93 N.C. 618, it was held that the trial judge properly excluded evidence tending to show only that a third person had *a motive* to commit the crime with which the defendant was charged.

Although the testimony which defendant sought to elicit on cross-examination was properly excluded, we note that a complete account of the same incident was later received into evidence from another witness. It is well established that any error in the exclusion of evidence is cured when other evidence of similar import is subsequently admitted. *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60; *State v. Edmondson,* 283 N.C. 533, 196 S.E. 2d 505; 1 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 30, p. 79.

[6] Defendant also contends that the trial judge erred by refusing to allow him to testify that he knew of other black males living in Murfreesboro who were about his size and had goatees.

This testimony, he argues, was relevant in that it would have discredited the prosecuting witnesses' identification of defendant.

"Evidence may have *some* tendency to prove a fact and still be inadmissible because its probative force is so weak that to receive it would confuse the issues, unfairly surprise the opponent, or unduly prolong the trial." 1 Stansbury's N. C. Evidence (Brandis Rev. 1973) § 77, p. 236. While the testimony offered by defendant may have some slight relevance, we feel its probative value is so weak that it should not have been allowed to distract the jury's attention from material matters. The trial judge, therefore, correctly excluded this evidence.

[7] Defendant next contends that the trial judge erred by failing to grant his motions to set aside the verdict and grant a new trial. He does not attack the trial judge's instructions as to intoxication and unconsciousness. Rather, he takes the position that the trial judge abused his discretion in denying the motions because, in view of the abundant evidence as to drunkenness and unconsciousness, it is manifest that the jury totally disregarded his instructions as to those defenses. These motions are, in effect, motions to set aside the verdict as being contrary to the greater weight of the evidence.

A motion to set aside a verdict as being contrary to the greater weight of the evidence is addressed to the trial judge's sound discretion and his ruling thereon will be upheld absent a showing of abuse of discretion. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335; *State v. Mason,* 279 N.C. 435, 183 S.E. 2d 661.

Admittedly there were numerous defense witnesses who stated that defendant was in a highly intoxicated condition on the morning of 8 November 1975. On the other hand, defendant's confession which was admitted into evidence discloses that he, with other persons, planned beforehand and carried out the robbery of Mr. Liverman. The testimony of Mr. and Mrs. Liverman concerning defendant's actions while on their premises strongly refutes defendant's evidence of intoxication and unconsciousness. Under these circumstances, no abuse of discretion on the part of the trial judge appears.

[8] Finally, defendant takes the position that the judgment imposing a life sentence should be vacated because it constituted cruel and unusual punishment and denied defendant equal protection of the laws in violation of the Eighth and Fourteenth

Amendments to the United States Constitution and in violation of Article I, §§ 19 and 27 of the North Carolina Constitution.

We have held in a host of cases that when the punishment does not exceed the limits fixed by statute, it cannot be considered cruel and unusual punishment in a constitutional sense. *State v. Cameron,* 284 N.C. 165, 200 S.E. 2d 186; *State v. Caldwell,* 269 N.C. 521, 153 S.E. 2d 34; *State v. Wilson,* 218 N.C. 769, 12 S.E. 2d 654.

[9] Defendant's argument that he was denied equal protection of the laws because of the wide range of discretion allowed the trial judge under G.S. 14-87(a) is without merit. The Legislature has granted a wide discretion to the trained presiding judge who has had the opportunity to hear the facts, observe the parties to the proceeding and, after verdict, to inquire into the habits, mentality and past record of the person to be sentenced before imposing punishment within the statutory limits. The use of this discretionary power by the trial judge is not a denial of equal protection of the laws. *Howard v. Fleming,* 191 U.S. 126, 48 L.Ed. 121, 24 S.Ct. 49; *Bratton v. Sigler,* 235 F. Supp. 448; *State v. Victorian,* 332 So. 2d 220. Even were we inclined to enter upon a journey of legislative policy making, this case would provide a sorry vehicle. Here defendant, while engaged in a planned armed robbery, at short range put three bullets into a victim who offered no visible resistance and after completing the robbery fired two bullets toward a person within her own dwelling. Defendant's past record furnished no basis for leniency. We think that Judge Fountain was well justified in imposing the maximum sentence provided by the statute.

This record shows that defendant had the benefit of a fairly conducted trial free of prejudicial error.

No error.