STATE OF NORTH CAROLINA v. JOHN RANDOLPH TYSOR

No. 301A82

(Filed 8 March 1983)

1. Homicide § 21.7— murder in the second degree—sufficiency of evidence

Where the defendant admitted that he pointed a gun at the deceased and fired the weapon with the intent to shoot him in the left arm, there was substantial evidence of each element of murder in the second degree and that the defendant was the perpetrator.

2. Homicide § 21.5— murder in the first degree—sufficiency of the evidence

The evidence of murder in the first degree was sufficient to go to the jury where it showed that deceased had argued with the defendant but no blows were exchanged during the initial argument; that the argument ended and the deceased moved to the bar; that everything quieted down for a few seconds; that approximately five minutes elapsed between the time he and the deceased began to argue and the time the shooting occurred; that he had "thought about many things" from the time the argument began until he shot the deceased; that the defendant had put a loaded, cocked pistol in his pocket that morning; that he had been shot before and that he did not want to be shot again; that no one had hit the defendant when he approached the deceased at the bar; that he used two hands to release the safety of his gun; that he shot the deceased three times, once in the back; and that the deceased was unarmed and had not threatened the defendant.

3. Criminal Law § 162— objection to evidence—later admitted without objection—waiver of earlier objection

Where defendant objected to the admission of certain evidence, but the same or like evidence was later admitted without objection, defendant waived the objection to the earlier evidence.

Justice FRYE did not participate in the consideration or decision of this case.

BEFORE *Lee, Judge*, presiding at the 30 November 1981 Criminal Session of Superior Court, CHATHAM County, the defendant was convicted of first degree murder and given a life sentence. The defendant appealed directly to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a).

*Rufus L. Edmisten, Attorney General, by J. Michael Carpenter, Assistant Attorney General, for the State.*

*Gregory Davis and William T. Wilson, Jr., for defendant-appellant.*

MITCHELL, Justice.

Through several assignments of error the defendant contends that the trial court erred in permitting the case to go to the jury and ruling that there was sufficient evidence to support the first degree and second degree murder charges. The defendant also assigns as error the admission of the testimony by one of the State's witnesses that she had previously seen the defendant with a gun. We find no reversible error.

The State produced evidence which tended to show that Wendell Palmer was shot and killed on 17 May 1981 in Chatham County. Jimmy Ray Goldston testified that he and the deceased hosted a private party that night at a social club called the "Greasy Spoon." The defendant, John Randolph Tysor, and his girl friend, Carolyn Frazier, were among the guests. Tysor and Frazier began to argue and, according to some witnesses, Tysor struck Frazier. The deceased, Wendell Palmer, approached Tysor and told him not to hit the deceased's cousin, Frazier. Tysor and Palmer began to argue and push and shove each other, although no blows were exchanged. Several of the guests who were outside began to come back into the club and Jimmy Ray Goldston fired a gun in the air to restore order.

After Jimmy Ray Goldston fired his gun, the defendant and the deceased stopped arguing and the deceased walked to the bar and stood there with his hands in his pocket. It was quiet for a few seconds and then Tysor walked up to Palmer and shot him at point blank range. Palmer was shot three times, once in the middle of the chest, once in the left shoulder and once in the back. The deceased was unarmed and the earlier argument between the defendant and the deceased appeared to be over at the time of the shooting. No one had struck or threatened the defendant prior to the shooting. When Palmer was shot he fell forward onto Tysor and both men fell on Jimmy Ray Goldston. Jimmy Ray Goldston gave his gun to Roy Earl Goldston who proceeded to use it to beat the defendant. Jimmy Ray Goldston told the defendant to wait until the police arrived and tell them what happened, but the defendant left before the police arrived.

The defendant testified and presented witnesses. Two of the defendant's witnesses testified that Palmer did not hit the defendant before the shooting. One witness testified that Palmer hit

Tysor during their argument before the shooting. Toby Siler testified for the defendant that Palmer was about to strike the defendant when Tysor shot him. Siler had attempted to persuade the defendant to leave the club after the initial argument with Palmer, but Tysor refused to do so. All of the witnesses for the defendant testified that they did not see the deceased with any weapon.

The defendant testified that after he was arguing with Frazier, Palmer came up to him and began to argue with him, used profanity and told him to leave Frazier alone. The defendant turned his back on Palmer and he was hit in the head from behind. Palmer had a "brass something" and hit the defendant again. Some other men surrounded the defendant, and Palmer said something to the effect that he was going to kill Tysor. The defendant tried to leave but the other men blocked his path. Tysor saw blood on his clothing and decided to shoot the deceased in the left arm. At that time, he heard a "boom" and thought that he had been shot. He pulled out his gun and as he fired someone grabbed his hand. Tysor testified that he had been shot once before and that he was afraid of being killed when he pulled out his gun. The defendant never saw the deceased with a gun, but saw him reach into his pocket and there was a bulge which the defendant thought was a gun. Tysor had put his gun in his own pocket that morning and it was loaded and cocked and he needed two hands to release the safety. He also testified that he was dazed from being hit by Palmer when the shooting occurred.

The defendant's first three assignments of error all question the sufficiency of the evidence to support his conviction of first degree murder. The first assignment concerns the failure of the trial court to grant his motion to dismiss the first degree murder charge at the conclusion of the State's evidence. Since the defendant chose to present evidence after the denial of his motion, this assignment of error was waived. G.S. 15-173; *State v. Jones*, 296 N.C. 75, 248 S.E. 2d 858 (1978); *State v. McKinney*, 288 N.C. 113, 215 S.E. 2d 578 (1975).

The defendant's next two assignments of error are directed to the failure of the trial court to grant the defendant's motion to dismiss the first degree murder and second degree murder charges at the end of all the evidence and the denial of the de-

fendant's motion to set aside the jury's verdict because the evidence was insufficient to support a conviction of first degree murder. These two assignments are basically the same and, except where noted later, will be considered together.

Before a defendant's motion to dismiss can be denied, the court must find substantial evidence of each essential element of the offense charged and of the defendant as the perpetrator of the crime. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980). Substantial evidence must be existing and real, but it does not have to exclude every reasonable hypothesis of innocence. *State v. Smith,* 40 N.C. App. 72, 252 S.E. 2d 535 (1979). "The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . . ." *State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980).

[1] Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Jenkins,* 300 N.C. 578, 268 S.E. 2d 458 (1980). The defendant admitted that he pointed a gun at the deceased and fired the weapon with the intent to shoot him in the left arm. The intentional use of a deadly weapon gives rise to a presumption that the killing was unlawful and that it was done with malice. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980). Thus, there was substantial evidence of each element of murder in the second degree and that the defendant was the perpetrator.

[2] Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. G.S. 14-17; *State v. Fleming,* 296 N.C. 559, 251 S.E. 2d 430 (1979). Premeditation is defined as thought beforehand for some length of time, however short. *State v. Myers,* 299 N.C. 671, 263 S.E. 2d 768 (1980). Deliberation means an intent to kill executed by the defendant in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation. *State v. Bush,* 307 N.C. 152, 297 S.E. 2d 563 (1982); *State v. Faust,* 254 N.C. 101, 118 S.E. 2d 769, *cert. denied,* 368 U.S. 851, 7 L.Ed. 2d 49, 82 S.Ct. 85 (1961). The

term "cool state of blood" does not mean that the defendant must be calm or tranquil or display the absence of emotion; rather, the defendant's anger or emotion must not have been such as to disturb the defendant's faculties and reason. *State v. Myers*, 299 N.C. 671, 263 S.E. 2d 768 (1980); *State v. Britt*, 285 N.C. 256, 204 S.E. 2d 817 (1974).

The defendant testified and tended by his testimony to directly deny the existence of the elements of premeditation and deliberation. Nevertheless the evidence, taken in the light most favorable to the State, was sufficient to allow the case to go to the jury on the charge of murder in the first degree. The deceased had argued with the defendant, but it was in response to the deceased's cousin being slapped by the defendant. Although the defendant and the deceased pushed each other, no blows were exchanged during the initial argument. The argument ended and the deceased moved to the bar. Everything quieted down for a few seconds. The defendant testified that approximately five minutes elapsed between the time he and the deceased began to argue and the time the shooting occurred. He stated that he had done a lot of thinking and that he "thought about many things" from the time the argument began until he shot the deceased. The defendant had put a loaded, cocked pistol in his pocket that morning. He had been shot before and he did not want to be shot again. No one had hit the defendant when he approached the deceased at the bar and, using two hands to release the safety of his gun, shot the deceased three times, once in the back. The deceased was unarmed and had not threatened the defendant. Given this evidence, there was substantial evidence of each essential element of murder in the first degree. The trial court's denial of the defendant's motion to dismiss at the end of all the evidence was proper.

The motion to set aside the verdict for insufficiency of the evidence to support the verdict was addressed to the sound discretion of the trial court and its ruling will not be disturbed on appeal absent a showing of an abuse of that discretion. *State v. Horton*, 299 N.C. 690, 263 S.E. 2d 745 (1980); *State v. Vick*, 287 N.C. 37, 213 S.E. 2d 335, *cert. dismissed*, 423 U.S. 918, 46 L.Ed. 2d 367, 96 S.Ct. 228 (1975). For the reasons previously discussed herein, the trial court in the present case did not abuse its discretion.

[3] The defendant's final assignment of error concerns the testimony of one of the State's witnesses, Diane McKinney. McKinney testified, over objection, that she had seen the defendant on a previous occasion with a gun. This evidence was presented during the State's case-in-chief. Later, the defendant testified that he had been shot about one year ago and that he had carried a gun ever since. It is a well established rule that if a party objects to the admission of certain evidence and the same or like evidence is later admitted without objection, the party has waived the objection to the earlier evidence. 1 Brandis on N.C. Evidence, § 30 (1982); *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972). The defendant's testimony here operated as a waiver of his objection to this portion of McKinney's testimony.

The defendant having received a fair trial, free from prejudicial error, we find

No error.

Justice FRYE did not participate in the consideration or decision of this case.