STATE OF NORTH CAROLINA v. ANNE SPEIGHT HINSON

No. 657A82

(Filed 2 February 1984)

1. **Homicide § 12— indictment for first degree murder**

   An indictment in the form authorized by G.S. 15-144 was sufficient to charge defendant with murder in the first degree.

2. **Homicide § 4— first degree murder—motion to try as non-capital case**

   The trial court properly denied the motion of a defendant charged with first degree murder that the case be tried as a non-capital felony since, without more, all first degree murder cases are properly tried as capital cases. G.S. 14-17.

3. **Criminal Law § 135.3; Jury § 7.11— first degree murder—death qualification of jury—no denial of impartial jury**

   A bifurcated trial in capital cases requiring the jury to be "death qualified" does not result in a "guilt prone" jury, thereby denying a defendant the right to trial by an impartial jury.

4. **Criminal Law § 102.4— remark by prosecutor—impropriety cured by court**

   Any impropriety in the prosecutor's remark, "I like these jurors, Your Honor," was cured when the court admonished the prosecutor that it was not a question of whether he personally liked them but whether he passed them.

5. **Jury § 6.4— "backbone" to impose death penalty—question by prosecutor**

   The trial court did not err in failing to sustain defendant's objection to the prosecutor's inquiry as to whether a juror had the "backbone" to impose the death penalty where the prosecutor was merely attempting to determine, in light of the juror's apparent equivocation, whether she had the strength of her convictions and could comply with the law and return a sentence of death if the evidence so required.

State v. Hinson

6. **Jury § 6.4— questions concerning juror's writing of paper on capital punishment**

Defendant was not prejudiced by the prosecutor's questions to a prospective juror concerning the details of a paper which she had written on capital punishment.

7. **Criminal Law § 71— shorthand statement of fact**

An officer's testimony that a mark in the shoulder of the road behind the victim's truck "appeared to have been made by a car tire" was competent as a shorthand statement of fact although the testimony may have had only slight probative value because there was no showing that the mark corresponded to the tires on defendant's car.

8. **Criminal Law § 89.2— admissibility of license plate for corroboration**

In a prosecution of defendant for the first degree murder of her husband, a South Carolina license plate discovered in a garbage can behind the house of defendant's lover was admissible to corroborate defendant's statements to officers that her lover and another man had placed a South Carolina tag on her car a short time prior to the murder and removed it a short time after the murder, although there was no showing that the recovered license plate was the same one used on the night of the murder.

9. **Criminal Law § 57— alleged murder weapon—broken mainspring—cause of break**

The trial court did not err in the admission of the alleged murder weapon, a shotgun, although the mainspring was broken when the shotgun was recovered. Moreover, a firearms expert was properly permitted to testify that simply firing the weapon might break the mainspring.

10. **Criminal Law § 99.4— remark of trial court—no expression of opinion**

When the prosecutor requested that defendant be instructed to watch him, not her lawyer, during questioning, the trial court did not commit error in responding that this was being done in the presence of everybody in the courtroom and that this was "part of her makeup on the stand, to be judged by the jury as she testifies."

11. **Criminal Law § 75.2— confessions not result of illegal arrest or coercion**

The evidence supported the trial court's determination that nine statements given by defendant to law officers with her attorney's acquiescence, at least four of which were in the presence of her attorney, were not fruits of an illegal arrest and were voluntary and not the result of "subtle psychological coercion" or improper inducements of fear and hope.

12. **Criminal Law § 80.2— refusal to permit advance corroboration**

The trial court did not err in refusing to permit advance corroboration of defendant by pre-arrest statements she had made to an SBI agent where there was no effort to introduce the pre-arrest statements when defendant did take the stand, and following her testimony, defendant was given an opportunity to recall the SBI agent.

**13. Criminal Law § 102— right to opening and closing arguments**

Where defendant offered evidence at trial, the prosecution had the right to make the opening and closing arguments to the jury.

**14. Criminal Law § 76.1— confessions—refusal to give instructions concerning admissibility**

The trial court did not err in refusing to give defendant's requested instructions that her confessions should be disregarded if they were the product of promises or threats or were otherwise procured by inquisitorial compulsion, that the jury should disregard the confessions if they were suggested by the district attorney or law enforcement officers under circumstances which might imply that the police were acting under instructions of the district attorney, or that the jury could not consider the statements if the prosecution had not produced substantial independent evidence on the crime charged, since the proffered instructions raised issues concerning the admissibility (*i.e.,* voluntariness) of defendant's confessions, and such issues were for the court and not the jury to resolve.

DEFENDANT appeals pursuant to G.S. 7A-27(a) from a life sentence upon her conviction of murder in the first degree. Judgment was entered by *Britt, J.,* at the 16 August 1982 Special Criminal Session, Superior Court, SCOTLAND County. Heard in the Supreme Court 7 June 1983.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Donald M. Dawkins, for defendant-appellant.*

FRYE, Justice.

Defendant was convicted of the 12 February 1982 murder of David Floyd Hinson. The victim was the defendant's husband. David Hinson's body was discovered in his pickup truck at approximately 10:30 p.m. on 12 February 1982. An investigation of the scene disclosed the following physical evidence: Two shotgun waddings were discovered near the body. There was a large hole in the rear window of the truck. There were "gouge" marks in the dirt shoulder of the road behind the truck. The victim appeared to have been shot in the back with a shotgun.

Beginning on 18 February and continuing until 16 July, the defendant gave numerous statements to law enforcement officers. Each of these statements was given either with the acquiescence or in the presence of her attorney. Details of the events

preceding the murder unfolded with each statement. To summarize briefly, it appears that the defendant and a co-worker, Fred Barfield, were next door neighbors, living in the Town of Wagram in Scotland County. They became lovers. Barfield was acquainted with Jack McIntyre. McIntyre was from Hartsville, South Carolina, but had resided for some time at a prison camp at Wagram. Barfield and the defendant determined to kill the defendant's husband. They enlisted the help of McIntyre. In defendant's words, the following took place:

> Sometime in June 1981, Fred call Jack McIntyre and ask him if he could do him a favor. He then discuss the killing of David. Fred talk with him on several occasion about this. In Sept. Fred got Jack gun and started to practice at the garden. Fred was going to do it himself (to kill David). I told him (Fred) that he couldn't do that.
>
> In Dec. things got worst. Fred call Jack and made plans for he and I to meet him in Bennetvill, S.C. we did and Jack said that he would have to have $25,000. That I could give it to him in 3 months. The money was for the killing of David.
>
> In Jan. I talk to Jack on the phone. Fred gave me a number to call him in Laurinburg. He ask me how were things going and I told him worst. He told me about the money and I told him that I didn't have it and he said, he would get it later.
>
> In Jan. I pick up Fred at the mill and we made a dry run. We left J. P. Stevens to turn at Creeds lake road and then to Lee's Mill Rd. and then turn to Highland Rd. Because Fred suppose to do it himself (to kill David). He couldn't because I told him not to. He then in turn call Jack again and so then made the plans. On Feb. 11, Fred call me and said that I would have to ride for the purpose of not taking.
>
> I told Fred not to do it because they put him in prison. And we had to close of a friend-ship.
>
> On Thur. (Feb. 11) night Fred call me at 10:15 p.m. and said that I would have to ride and so for me to pick him up at 9:30 p.m. (on Fri). I left the house at 9:30 p.m., pick him up (at J. P. Stevens) and when to creeds pond and pick Jack up. I got in the back seat, Fred drove, Jack got out of his El

Camaro and put the S.C. license plate on my car. I don't know who put the plates on, but the S.C. plate belong to Fred, which he had bought a red Cadillac from S.C. Both were at the trunk of my car. Fred then drove to Lee's Mill Rd. turn on Highland Rd. Jack get the gun out of his car and carry in to my car, along with the blue light. Fred drove down Highland road and didn't meet David so he turn around and drove some distance, when he met him (David) Fred turn around and follow him (David) and pull him (David) over and Jack got out and shot him. The blue light was cut on. I did not see who cut it on. We then turn around and went the same direction. We turn down Lee Mill Rd. Jack throw the shell out just befor the creek, then we turn to Creeds pond road and Jack throw the gun in the Creeds pond. After throwing the gun out Fred drove Jack to his car and took off the license plate. Jack cared the blue light with him. I in turn took Fred back to the plant. Fred cared the plates with him. He told me to call him when I got home. . . .

The reason that Fred and I had to ride, because we didn't have any up front money, and Jack said that we had to go so to keep the money in line. He (Jack) also told me that if I didn't pay. He would be looking for me. Sometime at 9:55 p.m. on Fri. Feb. 12, Jack shot David. Jack got out of the car and walk to the back of the truck and shot David.

Pursuant to a warrant, a search of Barfield's premises was conducted where law enforcement authorities discovered a South Carolina license plate in a garbage can behind the house. Based on information provided by the defendant, a shotgun was found in Creed's Pond where she indicated the murder weapon had been thrown. However, the mainspring of the shotgun was broken and no connection between the shotgun pellets in the victim's body or the wadding found beside the body could be made to the gun. To further corroborate defendant's statements, testimony at trial revealed that several long distance phone calls had been made from the defendant's residence to McIntyre's residence in Hartsville, South Carolina.

Defendant testified on her own behalf at trial. She repudiated all statements made prior to trial, denied being present at the scene of the crime, and offered the testimony of her two daughters as alibi witnesses.

Defendant's sixty-seven assignments of error, many of which have been expressly abandoned, fall into numerous broad categories which include rulings on pre-trial motions; rulings made during the jury selection process; rulings during trial as to certain evidentiary matters; rulings related to the admissibility of defendant's numerous pre-trial statements; issues concerning jury arguments; rulings related to requests for instructions; and rulings on post verdict motions. Upon a searching review of the record and trial transcript and careful consideration of those assignments of error brought forward and argued, we conclude that the defendant received a fair trial free of prejudicial error.

## I.  RULINGS ON PRE-TRIAL MOTIONS

[1] Defendant first assigns as error the trial court's failure to dismiss the indictment for murder in the first degree, arguing that the indictment did not adequately inform her of the facts and material elements of the offense charged. The indictment charged that:

> Anne Speight Hinson late of the County of Scotland on the 12th day of February 1982, with force and arms, at and in the said County, feloniously, wilfully, and of his malice aforethought, did kill and murder David Floyd Hinson contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.

The indictment appears in the form approved by G.S. § 15-144 and is in all respects proper. *State v. May*, 292 N.C. 644, 235 S.E. 2d 178, *cert. denied*, 434 U.S. 928 (1977).

[2] Prior to trial, defendant filed motions requesting "an Order declaring that this case . . . be tried as a non-capital felony," and "that death qualification voir dire questions not be allowed as being unconstitutional . . . ." The trial judge denied the motions.

With respect to defendant's first motion, G.S. § 14-17 provides:

> A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kid-

napping, burglary, or other felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree, *and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life as the court shall determine pursuant to G.S. 15A-2000.* (Emphasis added.)

Thus, without more, all first degree murder cases are properly tried as capital cases.

[3] With respect to defendant's second motion, we have repeatedly rejected the argument that a bifurcated trial in capital cases, requiring the jury to be "death qualified," results in a "guilt prone" jury, thereby denying a defendant the right to trial by an impartial jury. *See State v. Warren*, 309 N.C. 224, 306 S.E. 2d 446 (1983); *State v. Franklin*, 308 N.C. 682, 304 S.E. 2d 579 (1983); *State v. Hill*, 308 N.C. 382, 302 S.E. 2d 202 (1983). Defendant here offers neither evidence nor argument to require reconsideration of the well-established principles and concomitant reasoning set forth in the above cited cases. The motion was properly denied.

## II. RULINGS DURING JURY SELECTION PROCESS

Under three separate assignments of error, defendant challenges the propriety of certain comments made by the prosecutor during the jury selection process. She variously describes the prosecutor's conduct as "showy," theatrical, and unfair. Specifically, defendant objects to the prosecutor's comment respecting the first full jury panel, to wit: "I like these jurors, Your Honor." Secondly, during jury selection, an alternate juror indicated that although she believed the death penalty necessary, it was "not something [she] could do." The prosecutor responded, "You think it's necessary, but you just don't have backbone to do it, is that what you are saying?" He then thanked the juror for her "honesty," because it "save[d] the Clerk a lot of work." The Clerk of Court was in the process of determining when the juror had previously served. Finally, defendant objects to an incident which took place during the questioning of a juror who was later peremptorily excused by the defendant. The prosecutor elicited from this juror the fact that she had written a paper on capital punishment and later questioned the juror concerning the details of the paper. We will discuss seriatim each of these assignments of error.

**[4]** Following the prosecutor's comment that he "liked" the jurors, the trial judge admonished: "It's not a question of whether or not you personally like them. It's a question of whether or not you have passed them. I will ask you to do so." Any impropriety in the prosecutor's remark was thereby cured. *See, e.g., State v. Woods,* 307 N.C. 213, 297 S.E. 2d 574 (1982).

**[5]** With respect to the failure of the trial court to sustain defendant's objection to the prosecutor's inquiry as to whether a juror had the "backbone" to impose the death penalty, we find no prejudicial error. The prosecutor was merely attempting to determine, in light of the juror's apparent equivocation, whether she had the strength of her convictions and could comply with the law and return a sentence of death if the evidence so required. *See State v. Oliver,* 309 N.C. 326, 307 S.E. 2d 304 (1983). We would, however, urge the prosecutor to comport his language to the dignity of the courtroom.

**[6]** We have reviewed that portion of the transcript dealing with the prosecutor's questioning of Juror Hamby concerning her paper on capital punishment. Although it appears that the prosecutor may have been searching the juror for information favorable to the cause of capital punishment, the juror was not helpful. The "paper" was merely a four page theme, based on little outside reading, and contained no citations of authority. The juror was not asked, nor did she volunteer information concerning the substance of the paper. The defendant has failed to show how she was prejudiced by the mere asking of the questions. We find nothing in these comments or questions sufficiently prejudicial to warrant the granting of a new trial.

### III.   EVIDENTIARY QUESTIONS

**[7]** Defendant contends that the trial judge erred in overruling her objection and motion to strike the following statement made by Detective Patterson, the crime scene investigator. Detective Patterson testified that "[b]ehind the [victim's] truck, on the ground, approximately six feet behind the truck, there was a mark, skid mark, or gouge like place in the shoulder of the road that appeared to have been made by a car tire."

This testimony was admissible. As the crime scene investigator, Detective Patterson was merely describing what he

observed. This he was permitted to do. *State v. Jones*, 292 N.C. 255, 232 S.E. 2d 707 (1977). The witness' statement that the mark "appeared to have been made by a car tire" qualifies as a shorthand statement of fact. *State v. Joyner*, 301 N.C. 18, 269 S.E. 2d 125 (1980); *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164 (1980).

Defendant, however, challenges the probative value of the reference to the skid mark and notes that there was no showing that the mark corresponded to the tires on defendant's car. Assuming *arguendo* that the reference had slight probative value, defendant has failed to show any prejudicial effect warranting exclusion. Defendant acknowledges that the witness never attempted to compare the mark he observed at the crime scene to the tires of any specific vehicle. *Compare State v. Silhan*, 302 N.C. 223, 275 S.E. 2d 450 (1981). The trial court properly overruled defendant's objection.

[8] Defendant next assigns as error the admission into evidence of the South Carolina license plate discovered in a garbage can located behind Fred Barfield's house. Defendant argues that the State did not provide a sufficient foundation prior to the introduction of the plate into evidence and again challenges the probative value of this evidence.

Following the introduction of the South Carolina license plate into evidence, the State introduced defendant's statements in which it was revealed that Barfield and McIntyre had placed a South Carolina tag on defendant's car a short time prior to the murder and removed it a short time after the murder. There was no showing at trial, however, that the license plate recovered was the same one used on the night of the murder.

Certainly the discovery of the South Carolina license plate was relevant as tending to corroborate the defendant's statements. Its admission into evidence prior to the introduction of defendant's statement was premature. However, "when admissibility of evidence depends upon some preliminary showing, [the trial judge may] permit its introduction upon counsel's assurance that such showing will be forthcoming." 1 Brandis on North Carolina Evidence § 24 (1982); *State v. Duncan*, 282 N.C. 412, 193 S.E. 2d 65 (1972). Furthermore, a lack of a later foundation for prematurely admitted evidence, if the evidence is of little significance, will not be regarded as prejudicial. *See State v.*

*Lyles*, 298 N.C. 179, 257 S.E. 2d 410 (1979). Where, as here, the evidence served merely a corroborative purpose, its significance was clearly diminished. Under these circumstances, failure to show that the license plate found was that described in defendant's statement goes to the weight of this evidence, rather than its admissibility.

[9] Defendant challenges the admissibility of the alleged murder weapon, a shotgun, into evidence and contends that the trial court erred in allowing certain opinion testimony respecting the condition of the shotgun. Both contentions are premised on the fact that the mainspring on the shotgun was broken when it was recovered from Creed's Pond. Defendant argues that the State was erroneously permitted to question a firearms expert as to what might cause a mainspring failure. Over objection the witness answered, "They could break." The witness also answered affirmatively when asked whether simply firing the weapon might break the mainspring. Defendant offers this Court no guidance as to why the questions were improper or the answers prejudicial. The testimony was within the permissible scope of the witness' expertise. *See State v. Miller*, 302 N.C. 572, 276 S.E. 2d 417 (1981). Nor do we find erroneous the admission of the shotgun itself into evidence, despite defendant's argument that the "admission of the shotgun that had the faulty mainspring gave the District Attorney something he could pass to and point at the jury so as to further inflame them and prevent them from using their rational thinking as to how impossible it was for [the shotgun] to be the murder weapon." Defendant's argument goes to the weight of this evidence and not to its admissibility. *See State v. Joyner*, 301 N.C. 18, 269 S.E. 2d 125 (1980).

Finally, defendant argues that the trial court erred in the manner in which it permitted the prosecutor to cross-examine the defendant. Defendant directs our attention to two instances during her cross-examination in which the prosecutor allegedly questioned her improperly. The rule is well established that the scope of cross-examination rests largely within the discretion of the trial court, and its rulings thereon will not be disturbed absent a clear showing of abuse of discretion. *State v. Newman*, 308 N.C. 231, 302 S.E. 2d 174 (1983). Our review of the transcript, particularly those portions of defendant's cross-examination to which she objects, discloses no erroneous rulings.

[10] Defendant further objects to the trial judge's remarks following the prosecutor's request that defendant be instructed to watch him, not her lawyer, during questioning. The trial judge responded, "Well, this is being done in the presence of everybody in this courtroom, and—I won't try to control her eyes. That is part of her makeup on the stand, to be judged by the jury as she testifies." We consider the trial judge's response appropriate under the circumstances.

## IV.   ADMISSIBILITY OF PRE-TRIAL STATEMENTS

[11] During the six months following the murder of defendant's husband, she gave a total of nine statements to law enforcement authorities, six of which were given following her arrest, and each one supplying more detail than those preceding it. From the record two important facts emerge concerning these statements. First, it appears that at all times prior to trial it was the defendant's intention to cooperate fully with law enforcement authorities on the understanding that in return for her cooperation and testimony against Barfield and McIntyre, a plea arrangement would follow. Thus, all of the defendant's statements were made with the acquiescence of her attorney and, in the case of at least four of the statements, in the presence of her attorney. In addition, the trial court conducted extensive *voir dire* hearings prior to the admission of these statements, following which he made numerous findings of fact and concluded that each statement was freely and voluntarily given. Nevertheless, the defendant now argues that all six inculpatory statements given after her arrest were erroneously admitted into evidence because they were fruits of an illegal arrest, were not voluntary but were, rather, the result of "subtle psychological coercion," and were based on improper inducements of fear and hope.

Defendant was arrested pursuant to a validly issued warrant based on information gleaned from the scene of the crime together with two statements made by the defendant which strongly suggested her complicity in the murder. Furthermore, our review of the record discloses no evidence of improper or coercive methods employed during questioning. To the contrary, the evidence fully supports the trial judge's findings of fact. The findings support the trial judge's conclusions of law that, under the totality of the circumstances, all of the defendant's state-

ments were voluntary and admissible. *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed. 2d 684 (1969); *State v. Schneider*, 306 N.C. 351, 293 S.E. 2d 157 (1982). Defendant's arguments are simply without merit.

[12] Defendant's first three statements concerned some exculpatory information which the defendant attempted to introduce through the testimony of SBI Agent Snead. Defendant argues that it was error to exclude this testimony as it tended to corroborate her trial testimony. At the time Agent Snead took the stand, however, the defendant had not yet testified. While it is true that the trial judge may admit corroborative evidence prior to the testimony of the testifying witness, *State v. Lyles*, 298 N.C. 179, 257 S.E. 2d 410 (1979), a failure to allow advance corroboration absent a request cannot be considered erroneous. *State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death penalty vacated*, 408 U.S. 939 (1972). There is no right to corroboration in advance. When defendant eventually took the stand, no effort was made to introduce the three pre-arrest statements into evidence. Indeed, during a lengthy direct-examination, an exhaustive cross-examination, and a short redirect-examination, defendant only testified concerning all inculpatory statements in an effort to repudiate them. Following her testimony, the defendant was afforded an opportunity to recall Agent Snead. She declined to do so. Under these circumstances, defendant has failed to show error on the trial judge's part in refusing to permit advance corroboration.

## V. JURY ARGUMENT

[13] Defendant raises two questions concerning jury arguments which took place at the guilt phase of the trial. She first contends that the trial judge permitted the prosecutor to make improper arguments to the jury. We have reviewed each statement alleged to have been "improper" and find no error. The prosecutor merely argued the law and the facts in evidence and reasonable inferences to be drawn therefrom. His closing argument remained well within the bounds of propriety. He presented the State's case "with earnestness and vigor, using every legitimate means to bring about a just conviction." *State v. Hockett*, --- N.C. ---, ---, --- S.E. 2d, ---, --- (12-6-83); *State v. Craig*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, --- U.S. ---, 104 S.Ct. 263, 78 L.Ed.

2d 247 (1983). Defendant, however, further argues that the objected to portions of the State's argument were prejudicial in that, having been denied the right to the last argument, she was unable to refute them. In fact, as her second contention, defendant assigns error to the trial court's denial of her motion to have the final argument. As defendant offered evidence at trial, the prosecution had the right to make the opening and closing argument to the jury. Superior and District Court Rule 10; *See State v. Taylor*, 289 N.C. 223, 221 S.E. 2d 359 (1976). The contentions are without merit.

## VI.   JURY INSTRUCTIONS

**[14]**   Defendant contends that the trial court erred in denying certain of her requested jury instructions during the guilt phase of the trial. For the most part, the instructions given were essentially in accordance with those requested. Defendant has therefore failed to show prejudice. The trial judge, however, gave only the following instruction concerning defendant's confessions:

> Now, there is evidence in this case which tends to show that the defendant, Anne Speight Hinson, confessed that she was present when the killing charged in this case was done. If you find that the defendant made that confession, then you should consider all the circumstances underwhich it was made in determining whether it was a truthful confession and the weight you will give it.

Defendant, on the other hand, in nine separate instructions, requested that the trial judge instruct the jury essentially as follows: that the statements would be inadmissible and should be disregarded if they were the product of promises, threats or otherwise "procured by inquisitorial compulsion"; that if the statements "were suggested by the District Attorney, or law enforcement officers, under circumstances which might infer that the police were acting under instructions of the District Attorney," the jury could disregard them; and that if the prosecution had not produced substantial independent evidence of the crime charged, the jury could not consider the statements.

The proffered instructions, for the most part, raise issues concerning the admissibility (i.e. voluntariness) of defendant's confessions, issues which are not for the jury to resolve. As we

stated in *State v. Jenkins*, 292 N.C. 179, 185, 232 S.E. 2d 648, 652 (1977):

> Neither do we find merit in defendant's contention that the trial judge erred by failing to instruct the jury as to the law relating to the voluntariness of defendant's confession. The language contained in *State v. Walker*, 266 N.C. 269, 145 S.E. 2d 833, supports our conclusion. There Justice Bobbitt (later Chief Justice), speaking for the Court stated:
>
> > . . . In *S. v. Davis*, 253 N.C. 86, 116 S.E. 2d 365, Higgins, J., in accordance with decisions cited in the quotation from *S. v. Rogers*, 233 N.C. 390, 64 S.E. 2d 572, said: "According to our practice the question whether a confession is voluntary is determined in a preliminary inquiry before the trial judge." After such preliminary inquiry has been conducted, the approved practice is for the judge, in the absence of the jury, to make findings of fact. These findings are made only for one purpose, namely, to show the basis for the judge's decision as to the admissibility of the proffered testimony. *They are not for consideration by the jury and should not be referred to in the jury's presence.* (Emphasis in the original.)
> >
> > If the judge determines the proffered testimony is admissible, the jury is recalled, the objection to the admission of the testimony is overruled, and the testimony is received in evidence for consideration by the jury. If admitted in evidence, it is for the jury to determine whether the statements referred to in the testimony of the witness were in fact made by the defendant and the weight, if any, to be given such statements if made. Hence, evidence as to the circumstances under which the statements attributed to defendant were made may be offered or elicited on cross-examination in the presence of the jury. Admissibility is for determination by the judge unassisted by the jury. Credibility and weight are for determination by the jury unassisted by the judge.

These principles have most recently been affirmed in *State v. Barnett*, 307 N.C. 608, 300 S.E. 2d 340 (1983). The trial judge prop-

erly denied defendant's requests for jury instructions on the voluntariness aspect of her confessions.

## VII.   POST VERDICT MOTIONS

Following defendant's conviction of murder in the first degree, she made the following motions: (1) motion in arrest of judgment; (2) motion to set aside the verdict; (3) motion for a new trial; and (4) motions for appropriate relief on the grounds that the court failed to dismiss the charge prior to trial; that the court's rulings were contrary to law with regard to motions made before or during trial, or with regard to the admission or exclusion of evidence; that the evidence at the close of all the evidence was insufficient to justify submission of the case to the jury; that the court erroneously instructed the jury; and that the verdict was contrary to the weight of the evidence. The motions were properly denied. We find substantial evidence of each essential element of the offense charged and of the defendant as the perpetrator of the crime. The denial of defendant's motion to dismiss was proper. *State v. Tysor*, 307 N.C. 679, 300 S.E. 2d 366 (1983). The motion to set aside the verdict for insufficiency of the evidence was addressed to the sound discretion of the trial judge. His ruling will not be disturbed on appeal absent a showing of an abuse of discretion. *Id.* We find no such showing in the instant case. Nor have we found error in defendant's trial which would provide a basis for granting her motions for appropriate relief. Defendant received a fair trial free of prejudicial error.

No error.