STATE OF NORTH CAROLINA v. OTTO WITHERS, JR.

No. 287A83

(Filed 28 August 1984)

1. **Criminal Law § 77— statement by victim—objection sustained—absence of prejudicial error**

    In a prosecution for first degree murder and assault with a deadly weapon with intent to kill, any error by the trial judge in sustaining the State's objection to testimony by defendant's sister that the assault victim stated shortly after the shootings that they were accidental was not prejudicial to defendant considering the equivocal nature of the trial judge's ruling, the fact that the jury was never instructed to disregard evidence of the victim's references to the shootings as an accident, and the fact that the trial judge later instructed in his recapitulation of the evidence that the jury could consider the victim's statements in their deliberations.

2. **Criminal Law § 138— sentencing hearing for first degree murder—imposition of sentence for assault—failure to hold second sentencing hearing**

    In a prosecution wherein defendant was convicted of first degree murder and assault with a deadly weapon with intent to kill, and the trial court conducted a sentencing hearing to determine defendant's punishment for first degree murder, the trial court did not err in failing to conduct a second sentencing hearing pertaining only to defendant's conviction of assault with a deadly weapon with intent to kill before imposing a sentence on that charge. G.S. 15A-1334.

3. **Criminal Law § 138— prior convictions—not elements of crimes charged—use as aggravating factors**

    In a prosecution for first degree murder and assault with a deadly weapon with intent to kill, defendant's prior convictions of first degree murder and assault with intent to commit rape were not used to establish elements of the crimes charged and could be used as factors in aggravation of defendant's current conviction of assault with a deadly weapon with intent to kill where the prior offenses were relevant to establish defendant's parole status, and defendant's fear that his parole would be revoked rather than the offenses themselves was used as evidence to support the elements of premeditation and deliberation and intent to kill.

4. **Criminal Law § 135.3; Jury § 7.11— first degree murder—death qualification of jury—constitutionality**

    The procedure established in G.S. 15A-2000(a)(2) for "death-qualifying" a jury prior to the guilt phase of the trial and requiring the same jury to hear both the guilt and penalty phases of the trial is constitutional.

APPEAL by defendant from *Gaines, Judge,* at the 14 February 1983 Schedule A Criminal Session of MECKLENBURG County Superior Court.

Defendant was arrested on 5 July 1982 pursuant to warrants charging the first-degree murder of Roberta Hartsoe and assault with a deadly weapon with intent to kill Kathryn Hartsoe. These offenses were alleged to have been committed on 4 July 1982. On 16 August 1982, defendant was indicted for these crimes by the Mecklenburg County grand jury. He entered a plea of not guilty to each offense.

Kathryn Hartsoe, the mother of the deceased and defendant's financee at the time of the crimes, was the principal witness for the prosecution. She testified that she met defendant in Hickory, North Carolina in 1981. At that time she was married and lived with her husband and four children in Newton, North Carolina. She and her husband soon separated and Kathryn began to date defendant. When defendant was transferred by his employer to Charlotte in December, 1981, Kathryn and two of her children, Chris and Roberta, moved to Charlotte with him. The other Hartsoe children remained in Newton with their father.

Kathryn testified that in March, 1982, she went to a doctor complaining of nervousness and inability to sleep. She stated that she was nervous because of her impending divorce from her husband, pressure from her family to marry defendant, and commuting each day from Charlotte to Hickory to her work. The doctor prescribed an antidepressant, Activan, to help Kathryn relax.

On 24 June 1982, twelve-year-old Roberta told her mother that defendant had been "messing with her." When Kathryn confronted defendant with Roberta's accusations, he admitted asking Roberta to get in bed with him on several occasions and fondling her. Defendant apologized, saying that he was weak and he would make it up to Kathryn. Kathryn stated that this sexual misconduct became a daily topic of conversation between her and defendant, but that she made no report to the police at that time because she was still trying to decide whether she would marry defendant.

On 4 July 1982, the date the shootings occurred, Kathryn drove her son to Denver, North Carolina to meet his father. Roberta remained at home because she was being punished. On the way to Denver, Kathryn stopped to telephone home. She testified that defendant told her Roberta was being unruly and that she could hear her daughter yelling in the background.

When Kathryn returned from Denver, the apartment was empty and there was a note on the door from defendant. In the note, defendant explained that Roberta had run out of the house and that he assumed she had fled to her great-grandfather's house. He said that he had gone there to look for her. Kathryn testified that after reading the note, she called her grandfather's residence and defendant answered the phone. He suggested that Kathryn come for Roberta. Kathryn agreed and brought Roberta back to the apartment.

Defendant came home shortly thereafter. He told Kathryn that he and Roberta had been arguing and that during the argument, Roberta told him she wished he had been killed. As Kathryn listened to defendant's account of the argument, she became hysterical and took two nerve pills to calm down.

Kathryn testified that she slept fitfully during the afternoon and upon awakening, she observed defendant standing beside her pointing a gun at her head. He said something about not wanting his family to be humiliated and then fired the gun twice. One shot grazed her ear and the other bullet lodged in the bed. Defendant then said he was going to shoot Roberta and himself. Kathryn tried to follow as he left the room but she was unable to walk. As she stood leaning on the dresser in her bedroom, she heard Roberta moan. Defendant reentered the bedroom, pushed Kathryn back down on the bed and said, "Everything is going to be all right. We are going to live together forever after." He then shot himself and dropped the gun to the floor.

Kathryn testified that she kicked the gun under the bed and struggled to Roberta's room. She found her daughter lying face down on the floor. When Roberta did not move or respond, Kathryn ran to the telephone and dialed the emergency number to report the shooting. As she hung up the phone, defendant entered the room, asked her who she had spoken to and fell to the floor. At that moment, rescue personnel arrived and in response to their inquiry as to who did the shooting, Kathryn pointed to defendant. Kathryn and defendant were carried to a local hospital where defendant immediately underwent surgery.

Dr. Jeffrey Runge attended Kathryn in the emergency room. He stated that she appeared calm and that she made no inquiry

as to her daughter's condition. After cleaning and dressing Kathryn's superficial wound, Dr. Runge released her.

The State also presented the testimony of Dr. Hobart Wood, who performed the autopsy on Roberta. He testified that she had been shot twice in the back and stated that in his opinion, Roberta's death was caused by a bullet which penetrated her heart.

The police had also responded to Kathryn's emergency call. Officer Michael F. Warren stated that when he arrived, he noticed that Kathryn had been drinking. After the victims were removed from the apartment, the officers found a small handgun under the bed in the master bedroom. No fingerprints were found on the gun.

Roger Thompson, a firearms expert with the Charlotte Police Department, stated that he examined and tested the gun. In his opinion, each of the bullets removed from Roberta's body had been fired from the gun found in the master bedroom.

Finally, the State presented the testimony of Nebraska Massey, defendant's parole officer. Massey testified that defendant was paroled in November, 1979, after serving thirteen years of a life sentence imposed in 1966 upon his conviction of first-degree murder. Massey stated that defendant's parole would have been automatically revoked if he was convicted of any crime other than a minor traffic violation. He also stated that defendant was an exemplary parolee and that he had last visited with him on 2 July 1982.

Defendant offered the testimony of Dr. John Edward Humphrey, Dr. Humphrey, a psychiatrist, testified as to the side effects associated with the drug Activan, which Kathryn Hartsoe was taking on 4 July 1982 for anxiety. He stated that the drug is a central nervous system depressant and that, when combined with alcohol, the depressant effect becomes more intense and "people can really get fairly intoxicated pretty quickly and can slur their speech and stumble around and have physical symptoms like that."

Delores Withers, defendant's sister, also testified on her brother's behalf. She stated that Kathryn called her on 4 July immediately after the shooting. Delores hurried to the apartment and arrived there in time to speak briefly with Kathryn while she

was in the ambulance. Delores stated that she followed the emergency vehicles to the hospital. Upon her arrival there, she was informed by a nurse that Kathryn wanted to see her. Delores said that she located Kathryn in the emergency room and talked with her for a while. She remembered that Kathryn wanted to know how defendant was, whether defendant had mentioned her and if he still loved her. Delores testified that Kathryn apologized for what had happened.

Defendant's mother, Johnnie Mae Withers, testified that Kathryn also called her sometime on 4 July. She stated that Kathryn said she still loved defendant and wanted to visit him. She gave Mrs. Withers her telephone number in Newton and asked that she tell defendant to call her.

The jury returned verdicts of guilty of first-degree murder and assault with a deadly weapon with intent to kill.

The trial court conducted a sentencing hearing before the same jury following the first-degree murder conviction pursuant to G.S. 15A-2000 *et seq.* The jury found that the aggravating circumstances were insufficient to outweigh the mitigating circumstances and recommended that defendant be sentenced to life imprisonment for the murder of Roberta Hartsoe.[1]

The trial court imposed a sentence of life imprisonment on the first-degree murder conviction. Defendant also received a ten-year sentence on the conviction of assault with a deadly weapon with intent to kill, to run consecutively with the life sentence.

Defendant appealed the first-degree murder conviction to this Court as a matter of right pursuant to G.S. 7A-27(a). On 30 December 1983, we allowed defendant's motion to bypass the Court of Appeals on the conviction of assault with a deadly weapon with intent to kill.

---

1. The jury found beyond a reasonable doubt that two aggravating circumstances existed: (1) that defendant had been previously convicted of a felony involving the use or threat of violence to the person, and (2) that this murder was part of a course of conduct in which defendant engaged and which included the commission by him of other crimes of violence against another person or persons. G.S. 15A-2000 (e)(3) and (11). The jury did not specify which of the ten mitigating circumstances they found to exist.

*Rufus L. Edmisten, Attorney General, by Charles M. Hensey, Assistant Attorney General, for the State.*

*Adam Stein, Appellate Defender, by Lorinzo L. Joyner, Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error, defendant contends he is entitled to a new trial because of the trial judge's exclusion of certain testimony offered by defendant's sister, Delores Withers.

Delores testified that she arrived at her brother's apartment shortly after the shooting incidents on 4 July. She stated that Kathryn Hartsoe remarked to her at that time and again at the hospital that the shooting was an accident. She further testified as follows:

Q. When Kathryn kept saying it was an accident, did she say who she was referring to?

A. She did not.

Q. Was she talking about anybody just previous to that?

A. She was talking about my brother. She asked me how was he doing, and she kept saying "Well, it was an accident" and I didn't question her as to what she meant. I assumed, I was assuming the wrong thing, that she was speaking of her husband. I thought that they had come in and shot them all up. That is what I thought when she kept saying it was an accident.

Q. But she had been talking about Otto right before she made that statement?

Mr. Reeves: Well, objection to the whole line of questioning.

The Court: Sustained.

Mr. Reeves: Move to strike all of it, Your Honor.

The Court: Well, you know, well, Objection Sustained.

Defendant argues that sustaining the State's objection to the "whole line of questioning" was prejudicial error, although he concedes that had the State's objection been directed to Delores'

final answer in which she "assumed" who Kathryn was referring to, it would have been properly sustained.

We note initially that it is entirely unclear whether the trial judge in fact sustained the State's objection to the "whole line of questioning," or whether he intended to rule only on the testimony dealing with Delores' speculation as to what Kathryn meant when she spoke of the "accident." The trial judge never clearly ordered the evidence stricken, nor did he instruct the jury to disregard any portion of the testimony referring to Kathryn's characterization of the incident as an "accident." In fact, in his recapitulation of the evidence during final instructions to the jury, the trial judge stated unequivocally that the jury could consider Delores' testimony that Ms. Hartsoe said the shooting was an accident.

Considering the equivocal nature of the trial judge's ruling, the fact that the jury was never instructed to disregard evidence of Kathryn's references to the shootings as an accident, and that the trial judge later instructed in his recapitulation of the evidence that the jury could consider Kathryn's statements in their deliberations, we are of the opinion that any error by the trial judge in sustaining the State's objection to Delores Withers' testimony was not prejudicial to defendant. This assignment is overruled.

[2] Defendant next contends that the sentence imposed upon his conviction of assault with a deadly weapon with intent to kill was imposed in violation of G.S. 15A-1334.

Upon defendant's conviction of first-degree murder, the trial court conducted a sentencing hearing as required by G.S. 15A-2000 *et seq.*, to determine defendant's punishment. During this hearing, both the State and defendant presented evidence pertaining to issues relevant to sentencing. This included testimony concerning defendant's prior convictions, his behavior while confined in prison and while on parole and his previous work experience. Defendant also offered testimony relating to his prior family history. After considering the evidence presented at this hearing, the jury recommended that defendant be sentenced to life imprisonment for the first-degree murder of Roberta Hartsoe. Immediately after imposing a sentence of life imprisonment on the first-degree murder conviction and without conducting a sec-

ond sentencing hearing, the trial judge sentenced defendant to ten years' imprisonment on his conviction of assault with a deadly weapon with intent to kill. He found as aggravating factors pursuant to G.S. 15A-1340.4(a)(1)o that defendant had two prior convictions for criminal offenses punishable by more than 60 days' confinement, to wit, a prior conviction for first-degree murder in 1966 and a conviction of assault with intent to commit rape in 1968.

Defendant takes the position that G.S. 15A-1334 required the trial judge to conduct a second sentencing hearing before imposing a sentence upon defendant's conviction for assault with a deadly weapon with intent to kill. General Statute 15A-1334 requires the trial court to conduct a sentencing hearing on all felonies other than capital felonies with each party having the right to present relevant evidence with full opportunity for cross-examination. The defendant must also be given the opportunity to make a statement if he so desires.

We are not persuaded by defendant's argument that he is entitled to a new sentencing hearing on the assault conviction for failure of the trial judge to conduct a sentencing hearing limited only to this crime. We are convinced that the full sentencing hearing before the judge and jury on the first-degree murder charge was sufficient to afford defendant all that he was entitled to under G.S. 15A-1334, particularly where, as here, defense counsel did not object to the failure to conduct a second hearing at trial. The two crimes with which defendant was here charged were committed contemporaneously and therefore all evidence adduced at the sentencing hearing on the first-degree murder conviction pertaining to factors in aggravation or mitigation was equally applicable to the assault conviction. It would be a monumental waste of judicial time and energy to require the trial judge to conduct a second hearing wherein exactly the same evidence would again be presented.

We hold that the trial judge did not err in failing to conduct a second sentencing hearing pertaining only to defendant's conviction of assault with a deadly weapon with intent to kill. The record plainly supports the trial judge's finding in aggravation that defendant had previously been convicted of two offenses punishable by more than 60 days' confinement. The judge there-

fore acted within his discretion in imposing the maximum sentence for defendant's commission of this crime. *See State v. Ahearn,* 307 N.C. 584, 300 S.E. 2d 689 (1983).

[3] By this same assignment of error, defendant argues that it was error for the trial judge to use the prior convictions of first-degree murder and assault with intent to commit rape as factors in aggravation of his current conviction for assault with a deadly weapon with intent to kill. He argues that under the factual circumstances of this case, the use of these prior convictions to aggravate the assault charge violated the statutory mandate that "[e]vidence necessary to prove an element of the offense may not be used to prove any factor in aggravation, . . . ." G.S. 15A-1340.4(a)(1).

At trial, the prosecution presented evidence that defendant had been accused of engaging in sexual misconduct with Roberta Hartsoe. There was further evidence that defendant was fearful that if this misconduct were revealed to the police, his parole would be revoked. The State therefore theorized that defendant murdered Roberta Hartsoe and attempted to kill Kathryn because he was afraid they would initiate prosecution and he would lose his parole status.

From this, defendant argues that evidence of his prior convictions was admitted to prove intent to kill in the assault charge and premeditation and deliberation in the first-degree murder charge, and therefore this same evidence could not be used to aggravate the sentence received upon his conviction of felonious assault.

We simply do not agree with defendant's assertion that his prior convictions were used to establish an element of the crimes charged in the instant case. It is true the State argued that defendant's fear of losing his parole status was relevant to the issues of premeditation and deliberation and formation of the intent to kill. The prior convictions were therefore admitted to show why defendant was on parole and what would happen if his parole were revoked. Although the earlier offenses were relevant to establishing defendant's parole status, it was defendant's fear that his parole would be revoked and not the earlier offenses themselves which was used as evidence to support the elements

of premeditation and deliberation and intent to kill. This assignment is overruled.

**[4]**   Finally, defendant contends that the procedure established in G.S. 15A-2000(a)(2) for "death-qualifying" a jury prior to the guilt phase of the trial and requiring the same jury to hear both the guilt and penalty phases of the trial is unconstitutional. We have consistently rejected this contention and are not persuaded by the arguments advanced by defendant that our prior decisions on this issue are erroneous. Therefore, on the authority of *State v. Hinson*, 310 N.C. 245, 311 S.E. 2d 256 (1984) and *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *cert. denied*, 456 U.S. 932 (1982), *reh'g denied*, 459 U.S. 1189 (1983), this assignment is dismissed.

Defendant received a fair trial free of prejudicial error.

No error.